IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CR-15-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| MARK DAVIS and LAWANDA RAGLAND, | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to suppress (DE 36). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert B. Jones, Jr. entered memorandum and recommendation ("M&R") wherein he recommends that the court grant in part and deny in part defendants' motion to suppress. Defendants timely filed objections to the M&R, and the government did not respond in the time allotted. In this posture, issues raised are ripe for ruling. For the following reasons, the court ADOPTS the recommendations of the magistrate judge in large part and GRANTS in part and DENIES in part defendants' motion to suppress.

## BACKGROUND

Defendants Mark Davis ("Davis") and LaWanda Ragland ("Ragland") were indicted on January 19, 2012, with conspiracy to commit access device fraud and to possess stolen mail, in violation of 18 U.S.C. § 371; access device fraud, in violation of 18 U.S.C. §§ 1029(a)(3) and 2; aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 1028A and 2; and eleven (11) counts of possession of stolen mail, in violation of 18 U.S.C. §§ 1708 and 2. On April

27, 2012, defendants filed the instant motion, seeking to suppress all evidence resulting from a May 14, 2008, search of defendants' residence at 217 Sarah Lane, in Vance County, North Carolina. Police conducted the search after learning from Lee Harrell ("Harrell"), then manager of what was a Crusader Rent to Own store ("Crusader"), that Robert Hicks, a non-party, had moved goods he rented from Crusader – namely a washer and dryer – to 217 Sarah Lane in violation of his rental agreement. Based upon what they maintain they were told by Harrell in the course of their conversation with him, police were looking for evidence of possession of stolen goods and evidence of obtaining property by false pretenses.

The magistrate judge conducted a <u>Franks</u> and general suppression hearing on June 27, 2012. At hearing the government presented the testimony of Henderson City Attorney John H. Zollicoffer, Jr., Sergeant Durwood Campbell ("Campbell") of the Vance County Sheriff's Department ("VCSD"), and Lieutenants Steven Vaughn ("Vaughn") and Christopher Ball ("Ball") of the Henderson Police Department ("HPD"). Defendants presented the testimony Harrell, and of Michael D. Waters ("Waters"), who served as defendant Davis's attorney in state court. The parties filed supplemental memoranda after the hearing which were considered as outlined in the M&R. The court adopts and incorporates herein the statement of facts contained in the M&R, including the summary of testimony given at hearing.

## COURT'S DISCUSSION

A. Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific

2

Case 5:12-cr-00015-FL   Document 90   Filed 04/12/13   Page 2 of 15

error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B.     Analysis

   1.     Franks and the Warrant Affidavit

Defendants argue that suppression of evidence seized from the search of 217 Sarah Lane is necessary under Franks v. Delaware, 438 U.S. 154 (1978). In Franks the Supreme Court provided that if a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause," he is entitled to a hearing on the matter. Id. at 155-56.

> In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 156.

Hearing, as noted, was held before the magistrate judge. Defendants object to the resulting recommended finding that they have shown neither that Ball knowingly and intentionally, or with reckless disregard for the truth, made false statements in the search warrant affidavit, nor that he

3

intentionally omitted facts from the search warrant affidavit so as to mislead the magistrate into issuing the search warrant, or omitted them with reckless disregard. Defendants, relying on testimony by Harrell and Waters as well as Harrell's sworn affidavit, argue that false statements and material omissions were made, contending that (1) Harrell informed Ball that he had already repossessed the washer and dryer, (2) Harrell did not report seeing "nine big screen televisions, four Xbox 360s, and two computers in every room" (3) Harrell did not tell officers he believed stolen property was located in 217 Sarah Lane, and (4) Ball omitted from the affidavit that Harrell had obtained permission to enter 217 Sarah Lane and retrieve the washer and dryer.

Because of the conflicting testimony of government and defense witnesses, determination of this issue turns on the credibility of witnesses called to testify at the Franks hearing. "[R]eview of factual findings under the clearly-erroneous standard-with its deference to the trier of fact-is the rule, not the exception." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 675 (1985). The Supreme Court went on to hold that

> "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."

Id.; see also Beatty v. Chesapeake Center, Inc., 818 F.2d 318, 321 (4th Cir. 1987) ("The unique opportunity to observe the demeanor of witnesses requires that the trier of fact's credibility determinations be accorded great deference."). As was noted above, the district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). While a "*de novo* determination is not necessarily the same as a *de novo* hearing . . . even as to those findings based on the magistrate's judgment as to the credibility of the witnesses before

him," Proctor v. State Government of North Carolina, 830 F.2d 514, 518 n.2 (4th Cir. 1987), "it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal." United States v. Raddatz, 447 U.S. 667, 681 n.7 (1980).

The court has conducted a thorough *de novo* review of the record including defendant's motion to suppress, the transcripts of the hearing before the magistrate judge, the M&R, and defendants' objections thereto, and of the governing law. The court finds credible the version of the events leading up to and surrounding the May 14, 2008, search of 217 Sarah Lane related by Lieutenants Ball and Vaughn, and Sergeant Campbell. Campbell testified that on 2:00 p.m., May 13, 2008, Harrell requested that Campbell accompany him to 217 Sarah Lane while Harrell looked for some missing property. Tr. Suppression Hr'g. 34:21-24. The two went to that address, spoke to a man there who informed there was a washer and dryer in the house, and Harrell went inside to look but Campbell did not go inside. Id. at 42:14-21. Campbell's May 13, 2008, escort of Harrell was documented by a VCSD call-detail report. Id. at 37:9-38:20.

Vaughn's testimony is that at around 7:00 p.m. on May 13, 2008, he responded to the Crusader where Harrell requested his help in retrieving the washer and dryer from 217 Sarah Lane. Id. at 45:6-21. Harrell informed Vaughn that he had seen an excessive amount of electronics there which he believed were stolen. Id. at 48:1-10. Vaughn passed this information on to other officers in the Henderson Police Department the next morning, May 14, 2008. Id. at 49:1-21.

Finally, Ball testified that after Vaughn's report, he went to Crusader to speak with Harrell. Id. at 63:16-19. Harrell told Ball that he was missing two televisions, a washer, and a dryer, and that he had gone out the previous day and verified that the washer and dryer were at 217 Sarah Lane by

their serial numbers. Id. at 64:20-24. He also told Ball he thought other stolen property was located on the premises, and that he had seen nine televisions, four Xboxes, and two computers there. Id. at 65:6-11. Ball then obtained a search warrant, assembled a search team, and went to 217 Sarah Lane, and upon arrival found that Harrell had come, repossessed the washer and dryer, and left, five minutes prior. Id. at 86:14-22.

In contrast to the consistent and straightforward testimony of the above officers, Harrell's narrative conflicts not only with the testimony of the officers, but, as noted in the M&R, also with VCSD records as to the date of his trip to 217 Sarah Lane with Sergeant Campbell, and with what he earlier told Waters as to the timing of his repossession of the washer and dryer. As was also noted, Harrell's testimony that he did not initiate contact with HPD regarding the rented property fails to explain why HPD officers approached him in the first place, and why Ball knew the serial number of the washer and dryer to put down in his warrant affidavit. Ball's testimony, on the other hand, was consistent with that of Vaughn and Campbell. Moreover, the magistrate judge found Ball's testimony credible. For all of these reasons, the court adopts as its own the finding that Ball's testimony was credible and truthful, and therefore also adopts the finding that Ball did not knowingly, intentionally, or recklessly make false representation or material omissions in the warrant affidavit.

2.  The Good Faith Exception

Defendants next object to the recommendation that the court find that, although the warrant in this case was invalid for lack of probable cause,[1] suppression of the evidence found is

---

[1] Where neither party objected to the recommendation that the warrant was not supported by probable cause, the court need not reach this issue in disposing of the instant motion. The Supreme Court has explained that "courts have considerable discretion in conforming their decision-making processes to the exigencies of particular cases"

6

inappropriate where the officers acted in good faith reliance on the search warrant obtained. Fruits of a search conducted pursuant to a warrant should not be suppressed when the warrant is subsequently found invalid for lack of probable cause unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Leon, 468 U.S. 897, 922 n.23 (1984). The Court outlined four circumstances in which this "good faith exception" is inapplicable, namely, when

> (1) "the magistrate ... was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";
> (2) the magistrate acted as a rubber stamp for the officers and so "wholly abandoned" his detached and neutral "judicial role";
> (3) "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
> (4) "a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 923).

Defendants maintain that the first three circumstances precluding application of the good faith exception apply here. Where the court has already found that Ball did not knowingly or recklessly include false information or material omissions, the first circumstance is inapplicable.

Nor is there evidence that the magistrate wholly abandoned his judicial role and acted as a rubber stamp for Ball. Defendants argue that the magistrate acted as a mere rubber stamp because he authorized a search outside of the Henderson city limits and that such a search is illegal under "well-established law." As was made clear at hearing, however, there is genuine disagreement among reputable local attorneys and law enforcement as to the extent of the HPD's jurisdiction to

---

and need not always decide the underlying Fourth Amendment issue when making a good faith determination. Leon, 468 U.S. at 924-25.

7

execute search warrants beyond Henderson city limits based upon Henderson's charter. While the North Carolina Attorney General issued an opinion letter in 1958 taking the position that the city charter does not grant HPD officers jurisdiction to execute search warrants outside of city limits, no court has ever ruled on the issue. Thus, there is no "well-established law" showing that a search outside of Henderson city limits by HPD is illegal and there is otherwise no evidence that the magistrate abandoned his judicial role. Cf. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979) (judge abandoned his judicial role and acted as a member – if not leader – of police search party when he accompanied a police officers to an adult book store and inspected materials inside, authorizing seizures of those he deemed obscene).

Finally, the warrant affidavit did not so lack indicia of probable cause as to render official belief in probable cause entirely unreasonable. A belief in probable cause may be supported by something less than a substantial basis yet not be entirely unreasonable. "'Substantial basis' provides the measure for determination of whether probable cause exists in the first instance. If a lack of substantial basis prevented application of the Leon objective good faith exception, the exception would be devoid of substance." Bynum, 293 F.3d at 195. "[I]n determining an officer's good faith, a court may properly look beyond the facts stated in the affidavit and consider uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." United States v. McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011).

For the reasons given in the thoughtful and thorough M&R, in this case it was not entirely unreasonable for officers to rely on the issued warrant. The warrant affidavit explains who Harrell is, notes that Harrell spoke with Ball, and includes information regarding what Harrell saw inside 217 Sarah Lane. It also informs that Harrell discovered that the employer provided by Hicks on his

8

rental application was in fact fraudulent.

Looking beyond the four corners of the affidavit, Ball also spoke with Harrell in person. This allowed Ball to judge his credibility and "expose[d] [Harrell] to accountability for making a false statement." United States v. DeQuasie, 373 F.3d 509, 523 (4th Cir. 2004). Harrell also provided Ball with documents from the investigation that Harrell had conducted into the location of the missing property as well as documents from other rental companies counseling against renting to Hicks. Moreover, as manager of the Crusader Rent to Own, Harrell had an interest in recovering stolen property. See id. (informants' interest in victim's well-being gave them incentive to be truthful).

This was not a situation where the warrant was supported merely by an affidavit that "depended on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability." United States v. Wilhelm, 80 F.3d 116, 120 (4th Cir. 1996). Rather, in looking to the information contained in the affidavit, as well as what was known to Ball, official reliance on this warrant was not entirely unreasonable. See DeQuasie, 373 F.3d at 522-23 (holding that Leon exception was applicable where two informants told police in a face-to-face meeting that a family member, Lora, was being held captive at the defendant's residence, where the informants' only source of this information was Lora's sister Tiffany, who accompanied Lora to defendant's residence, and police did not independently corroborate the information provided by the informants).

Defendants, however, argue that Ball was reckless in preparing the warrant where he failed to attempt to contact Hicks, the VCSD, or any of the names listed by Hicks on the rental application. Thus they argue that he could not be justified in believing there were sufficient facts to establish

9

probable cause. Defendants cite two First Circuit cases, United States v. Fuccillo, 808 F.2d 173 (1st Cir. 1987), and United States v. Vigeant, 176 F.3d 565 (1st Cir. 2002). Both cases are neither binding on this court nor applicable to the facts of this case.

The First Circuit in Fuccillo refused to apply the good-faith exception to agents who "were reckless in not including in the affidavit information which was known or easily accessible to them." 808 F.2d at 178. That case, however, dealt with a warrant invalidated for lack of particularity where the agents could have provided information which would have allowed for a more limited warrant. Id. at 176-77. Here the issue is not whether Ball withheld information allowing him to search more broadly than he legally could, but whether or not his belief in probable cause was entirely unreasonable. In Vigeant, the court of appeals found that the good faith exception did not apply where the magistrate was misled by false information contained in the affidavit. 176 F.3d at 571-72. Here the court has determined that false statements were not knowingly or recklessly made. Therefore Vigeant is also inapposite. Thus the court overrules defendants' objection and adopts the recommendation that the good faith exception applies here.

3.  Particularity of the Search Warrant

Defendants' next objection is to the recommendation that the court find the warrant described the items to be seized with sufficient particularity. Once again, for the reasons outlined in the M&R, defendants' objection is overruled. The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. This particularity requirement is meant to ensure that citizens are not subjected to "a general, exploratory rummaging in [their] belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). "The degree of specificity required when describing the goods to be seized may

10

necessarily vary according to the circumstances and type of items involved . . . (T)here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized." United States v. Torch, 609 F.2d 1088, 1090 (4th Cir. 1979) (quoting United States v. Davis, 542 F.2d 743, 745 (8th Cir. 1976)). Additionally, in assessing the specificity of a warrant, all parts should be read together. United States v. Weston, 962 F.2d 8, 1992 WL 90554, at *5 (4th Cir. Apr. 30, 1992) (unpublished table decision). Where a warrant limits police discretion by allowing them only to seize evidence of a particular crime it is generally not overbroad. United States v. Jones, 31 F.3d 1304, 1313 (4th Cir. 1994).

In this case, while the search warrant describes certain broad categories of items to be searched for and seized, such as "documents related to fraudulent activities; photographs; any other stolen property;" it also lists two North Carolina crimes: possession of stolen property, and obtaining property by false pretense, in violation of N.C. Gen. Stat. §§ 14-71.1 and 14-100. Thus officers were instructed to look only for items related to those particular crimes.

As set forth in the M&R, evidence of fraudulent schemes is generally in the form of multiple documents and it is difficult to define in advance exactly what those documents are where officers may not know exactly what documents will show fraud. Thus in cases involving fraud, warrants are often broader. See, e.g., In re Grand Jury Subpoena, 920 F.2d 235, 239 (4th Cir. 1990) (authorizing search and seizure for a broad swath of "[b]ooks, records and documents relative to the financial transactions of [defendants]"). Here, the requirements of the warrant properly limited police in what they were to search for and seize by limiting their search to items of evidence of two specific crimes. See Jones, 31 F.3d at 1313. The warrant did not permit a general search of the premises, and thus is not invalid for lack of particularity.

11

4.  Execution of the Warrant

Defendants' final objection is to the recommended finding that the officers validly executed the warrant. Defendants argue the officers exceeded the scope of the warrant, and conducted an impermissible general search. When determining the permissible breadth of a search, a warrant " is not to be assessed in a hypertechnical manner." United States v. Srivastava, 540 F.3d 277, 289 (4th Cir. 2008). Instead, it ought to be read in "a commonsense and realistic fashion." Id. (quoting United States v. Ventresca, 380 U.S. 102, 108, (1965)). A search will not be found overbroad merely because it results in additional criminal charges. United States v. Williams, 592 F.3d 511, 520 (4th Cir. 2010). "[T]he relevant inquiry is whether the . . . seizures were reasonable under all the circumstances." United States v. Squillacote, 221 F.3d 542, 557 (4th Cir. 2000).

Moreover, when some items not identified in the warrant are improperly seized, suppression of items validly seized is generally not necessary. United States v. Robinson, 275 F.3d 371, 381 (4th Cir. 2001). Rather, blanket suppression is an "extraordinary remedy that should be used only when the violations of the warrant's requirements are so extreme that the search is essentially transformed into an impermissible general search." Id.

In this case, the warrant authorized police to search for evidence relating to two North Carolina crimes: possession of stolen property and obtaining property by false pretenses. The police seized three hundred and sixty-nine (369) items. Most of the items seized were checks, stolen mail, computer equipment, credit cards, social security cards, and bills. All of these items were potential evidence of the above crimes and so reasonably seized. See United States v. Phillips, 588 F.3d 218, 227 (4th Cir. 2009) (officers justified in seizing documents where they reasonably appeared to them to be probative of crimes within the scope of the warrant and "[o]nly with the benefit of hindsight"

12

could it be determined that such documents were primarily probative of securities fraud instead).

As noted in the M&R, however, some items seized did not potentially relate to the crimes listed in the warrant. It was recommended in the M&R that the court find the following items to be outside the scope of the warrant: ammunition, a rifle, earphones, a silver shoebox and a digital recording entitled "Van Highlights" ("DVD"). With the exception of the rifle and ammunition, discussed further below, the court agrees. The court also finds that a pair of men's sweatpants and a men's pullover seized were not within the scope of the warrant where there is no clear relationship between these items and possession of stolen property or obtaining property by false pretenses. The vast majority, however, of the three hundred and sixty-nine (369) items seized were within the scope of the search warrant. Accordingly, blanket suppression is inappropriate, and suppression is only granted as to the earphones, shoebox, Recorded DVD, and men's clothing.

With respect to the rifle and ammunition, the court finds that their seizure is justified under the plain view exception.

> For the plain view exception to the warrant rule to apply, the government must show that: (1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a "lawful right of access" to the seized items; and (3) the incriminating character of the items was immediately apparent.

United States v. Davis, 690 F.3d 226, 233 (4th Cir. 2012).

Here, police were lawfully in a place from which they could see the rifle and ammunition, and had lawful rights of access to those items because their search was valid under Leon, and the rifle and ammunition were found in places where objects of the search – such as documents – could be found. See United States v. Bullard, 103 F.3d 121, 1996 WL 683790, at *3 (4th Cir. Nov. 27, 1996) (unpublished table decision) (seizure of a firearm found in an armoir by police searching for

.

13

evidence of bank fraud met the first two conditions in the plain view analysis where a search was valid under the good faith exception and the firearm was found in a place where evidence of bank fraud could be found).

Moreover, while executing the warrant, Ball contacted the police department and learned that defendant Davis had a prior felony conviction. Thus, although it appears the officers performing the search did not know defendant Davis was a convicted felon the moment they discovered the firearm and ammunition, it is clear that while on the premises they learned of Davis's prior felony conviction, Tr. Suppression Hr'g. 82:21-24, 83:4-8, thus making the incriminating nature of the item immediately apparent and justifying its seizure. Cf. United States v. Wells, 98 F.3d 808, 809-10 (4th Cir 1996) (under the plain view exception an agent searching the defendant's house for evidence of bank fraud who discovered a firearm was justified in subsequently seizing it after reporting it to his supervisor who informed the agent that the defendant was a convicted felon); see also United State v. Frederick, 152 F. App'x 470, 472-73 (6th Cir. 2005) (officers were justified in temporarily seizing a firearm during the course of a search because of the danger it presented, and upon learning the defendant was a convicted felon, to permanently seize it under the plain view exception); United States v. Robinson, 756 F.2d 56, 60 (8th Cir. 1985) (officers who temporarily seized a weapon from defendant during the course of a search for marijuana and held it for safety subsequently properly permanently seized it under the plain view exception when coming across a letter from the state probation office showing that the defendant was a convicted felon).

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no

14

such objection has been made, the court overrules defendants' objections, ADOPTS the findings and recommendations of the magistrate judge in large part, GRANTS defendants' motion to suppress with respect to the seized the earphones, shoebox, DVD, and men's clothing, and DENIES the motion in remaining part.

SO ORDERED, this 12th day of April, 2013.

LOUISE W. FLANAGAN
United States District Judge